Filed 7/28/26  Botiach v. City of Los Angeles CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| IONATAN BOTIACH, | B345654 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 24STCV20474) |
| v. | |
| CITY OF LOS ANGELES, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Virginia Keeney, Judge.  Affirmed, in part, and reversed and remanded, in part.

Ionatan Botiach, self-represented litigant, for Plaintiff and Appellant.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Kathleen A. Kenealy, Chief Assistant City Attorney, Shaun Dabby Jacobs, Assistant City Attorney, and

Brian Cheng, Deputy City Attorney, for Defendant and Respondent City of Los Angeles.

Friedman & Chapman, Christofer R. Chapman, for Defendants and Respondents Greek Lopez, Melissa Lopez, and Esperanza Salinas Banos.

---

## I.     INTRODUCTION

Plaintiff Ionatan Botiach appeals from two trial court orders, one sustaining without leave to amend the demurrer of the City of Los Angeles (the City) and the other granting the individual defendants'[1] special motion to strike under the anti-SLAPP statute (Code Civ. Proc., § 425.16 (section 425.16)[2]).

We affirm the demurrer ruling because plaintiff failed to plead compliance with the claim filing requirements of the Government Claims Act (Claims Act).[3]  But we reverse, in part,

---

[1]     The individual defendants are Esperanza Salinas (Salinas) and her two adult children, Greek and Melissa Lopez.  We will refer to them collectively as the "individual defendants."  When necessary for clarity, the Lopez siblings will be referred to by their first names.

[2]     Section 425.16 is commonly referred to as the anti-SLAPP statute.  "SLAPP is an acronym for 'strategic lawsuit against participation.'" (*Jarrows Formula, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

[3]     Government Code section 810, et seq.; formerly the Tort Claims Act.  "Under the Government Claims Act, a person may not sue a public entity for personal injury unless he or she

2

the order granting the special motion to strike because plaintiff demonstrated that two of his causes of action had minimal merit.

## II. BACKGROUND

A. *Complaint*

On August 14, 2024, plaintiff filed the complaint in this action asserting six causes of action for (1) antisemitism, racism, violation of constitutional rights, false arrest, malicious prosecution (against all defendants); (2) defamation (against all defendants); (3) "severe emotional distress" (against all defendants); (4) civil conspiracy, fraud, unjust enrichment (against the individual defendants); (5) declaratory relief (against the City); and (6) punitive damages (against all defendants). In support of his claims, plaintiff alleged the following facts concerning his arrests and prosecutions by the City.

### 1. June 2019 Incident and Restraining Order

In June 2019, plaintiff agreed to allow Salinas[4] to "use his empty office as a nail shop," but she then invited her two adult

---

presents a timely written claim for damages to the public entity. ([Gov. Code, ]§§ 911.2, subd. (a), 945.4.)" (*Perez v. Golden Empire Transit Dist.* (2012) 209 Cal.App.4th 1228, 1233.)

[4] As we explain below, Salinas filed a declaration in which she testified that plaintiff was her ex-boyfriend, a fact which plaintiff does not dispute.

3

children, Greek and Melissa, to "occupy the second unit of that [property]⁵" without plaintiff's permission.

In June 2021, plaintiff asked Greek and Melissa to leave the property. On June 29, 2021, plaintiff heard voices inside the property and, when he "asked who was there, Greek, who was hiding inside, called [the] police, falsely claiming 'domestic violence[.]'"

Salinas applied for a domestic violence protective order against plaintiff supported by her declaration in which she claimed she was inside the house with her children during the June 29 incident. Based on the individual defendants' false testimony, the trial court issued a three-year restraining order against plaintiff (civil restraining order) in August 2021 which the individual defendants then "used to live in the [p]roperty" rent free.

### 2. Criminal Action, First Arrest, and Plea Deal

On August 24, 2021, three weeks after the civil restraining order issued, plaintiff was walking by his house when he saw the individual defendants driving their new car. When he stopped to take their photo, they "called 911, falsely claiming that [p]laintiff was violating the [civil restraining order]."

On April 27, 2022, plaintiff drove to the LA Fitness club on La Cienega Boulevard for his nightly swim, his routine for the past 25 years. On his way, he saw the individual defendants' car parked at 1801 South La Cienega Boulevard and decided to take

---

⁵ Plaintiff's property was located at 5037 West Pico Boulevard in Los Angeles (the property). Plaintiff's home was next to the property.

4

a photo of it, but Melissa "suddenly appeared" and called Salinas, who was cleaning an office at that location, a block from plaintiff's club. Plaintiff did not speak to either defendant and instead drove to his club, "unaware that [the individual d]efendants [had] called 911."

Two nights later, on April 29, 2022, plaintiff, while outside his house, observed Greek and Melissa driving their car into the alley that led to his house. Plaintiff told them they could not park in the alley. In response, Greek called the police, who responded and determined that plaintiff had done nothing wrong. But Greek then called Salinas, "who rushed over and told the officers" that two days prior, plaintiff came to "'her place of employment,'" located at 1801 South La Cienega Boulevard. (Boldface omitted.) The police then arrested plaintiff.

Plaintiff was incarcerated at the Twin Towers facility. On May 2, 2022, while still incarcerated, plaintiff, who suffered from high blood pressure, fainted and was rushed to the hospital. On May 4, 2022, plaintiff fainted again and was again rushed to the hospital. The District Attorney dismissed all charges against him, but the City Attorney then decided to prosecute him for vandalism and violation of the protective order based on the June and August incidents (vandalism case). He was finally released on bail on May 6, 2022.

On May 31, 2022, plaintiff appeared for trial in the vandalism case. Prior to trial, the City Attorney offered plaintiff a plea deal, which plaintiff eventually accepted. The trial court also entered a criminal protective order pursuant to Penal Code section 136.2[6], subdivision (i)(1) that required plaintiff to stay at

---

[6]     All further statutory references are to the Penal Code unless otherwise indicated.

least 10 feet away from Salinas (criminal protective order), but did not apply to Greek or Melissa.

### 3. August 18, 2023, Arrest and Charges

Beginning on June 28, 2022, and continuing through May 2023, the individual defendants repeatedly called "911 for no reason other than to harass [p]laintiff," including when he was swimming at his LA Fitness club. Plaintiff was "repeatedly detained for hours, and released only after it was determined by the officers that he was doing nothing other than walking by his house." On one occasion in late May or early June 2023, defendant was swimming at his club when Salinas came in after him. She called Greek, who called the police, and defendant was taken in handcuffs to the police station, but then released at 2:00 a.m. with no charges.

On June 29, 2023, plaintiff filed a motion to rescind the civil restraining order with a hearing set for August 18, 2023. Plaintiff appeared on that date for the hearing, but the trial court continued it to the following week.

On the evening of August 18, 2023, plaintiff went swimming at his club but as he was leaving, police officers arrived and told him Salinas had seen him in the pool from a vantage point 150 yards away. She was "'adamant' he must be arrested." Salinas came to the club because she knew plaintiff's daily routine, which included a nightly swim. She remained there, lying "in ambush" and hoping to get plaintiff arrested. Because the responding officers were uncertain of how to proceed, they called their supervisor, Sergeant Perez, who arrived and "ordered [p]laintiff arrested—without even talking to him[.]"

6

(Underscoring omitted.)  Plaintiff was arrested with his bail set at $20,000.

On August 22, 2023, the City Attorney "filed three felony charges" (boldface omitted) against plaintiff.  When plaintiff appeared to answer the charges, the trial court advised him that the sentence on each count was one year, and the prosecutor offered a plea deal.  Plaintiff, however, refused the deal and the court's offer to continue the trial.

On August 29, 2023, after his family posted bail, plaintiff was released.  That same day, he requested discovery from Deputy City Attorney Andre Castellanos.  Castellanos responded by providing body worn camera videos of plaintiff's second arrest.  On August 31, 2023, plaintiff replied by reminding Castellanos of plaintiff's other discovery demands and requesting further information.  When Castellanos did not respond, the trial court ordered a response in writing.

On September 13, 2023, Deputy City Attorney Castellanos sent plaintiff an email in which he advised that, based on his review of the evidence, the City had decided to move to dismiss the case.  Castellanos also advised plaintiff that he had "spoke[n] to the victim" and wished to put plaintiff "on notice that both protected people, [Salinas] and Greek, work at LA Fitness.  If you go to that location you may be arrested and charged for violating the civil restraining order … ."  Plaintiff responded that same night, insisting that the case should not be dismissed and demanding a jury trial.  The next day, at the continued court hearing, Castellanos informed the trial court that the City would dismiss the charges.

B.    *Demurrer Proceedings*

1.    Demurrer

On October 18, 2024, the City filed a demurrer to the complaint, arguing that (1) plaintiff failed to comply with the Claims Act; (2) the City and its individual prosecutors were immune from the malicious prosecution and defamation claims; (3) plaintiff's claims were barred by the applicable statutes of limitations; (4) the City could not be held liable for punitive damages; (5) because plaintiff was convicted of disturbing the peace in the vandalism case, the City could not be liable for maliciously prosecuting that claim; and (6) because the trial court in the vandalism case had issued a valid arrest warrant, the City could not be liable for false arrest as to the April 29, 2022, arrest.

The City supported its demurrer with a request for judicial notice of the trial court docket for the vandalism case, number 1CJ03589, which reflected the following facts.  On November 16, 2021, based on an incident that occurred on June 29, 2021, the Los Angeles City Attorney filed a complaint charging defendant with two misdemeanors—vandalism in violation of section 594, subdivision (a) and violation of a protective order under section 273.6, subdivision (a).

At the December 7, 2021, arraignment, defendant failed to appear and a warrant for his arrest was issued setting bail at $25,000.

On May 4, 2022, plaintiff, who was then in custody based on the warrant, was scheduled to appear for further proceedings in the vandalism case, but because he was a miss out, the trial court continued the matter for arraignment to the next day and issued a remand order.

8

On May 5, 2022, plaintiff appeared for arraignment, pleaded not guilty on both counts, and the trial court ordered him released on his own recognizance.

On May 31, 2022, based on a plea agreement, the prosecution moved to amend the complaint against defendant to add count 3, disturbing the peace in violation of section 415. Plaintiff pleaded no contest to count 3, and the trial court found him guilty and dismissed counts 1 and 2 in the interest of justice pursuant to section 1385.

### 2. Plaintiff's Opposition

Plaintiff filed an opposition to the demurrer that began by requesting a continuance of the hearing based on the City's allegedly evasive or incomplete discovery responses. Plaintiff next argued that (1) he complied with the Claims Act by filing a late claim against the City which was rejected, a fact the City was concealing by its evasive discovery responses, and the City "had substantive knowledge about [p]laintiff's claims [from his prior action against it], and it should be estopped from denying his right to sue" (underscoring omitted); (2) the City and its employees did not have absolute immunity from suit; and (3) the City was misleading the trial court by asserting that plaintiff's April 2022 arrest was made pursuant to a valid warrant.

In support of his opposition, plaintiff filed a declaration[7] stating the following facts. Plaintiff had earlier filed a complaint against the City, case number 23STCV27860, that was then

---

[7] Plaintiff's declaration in support of his opposition to the demurrer did not attach any exhibits and he did not file a request for judicial notice in support of his opposition.

consolidated with his previous action against the individual defendants, case number 22STCV22239. In that consolidated action, the City propounded extensive written discovery, to which plaintiff responded, but the City did not raise any issue about the Claims Act. The City also offered to settle but stated that it first needed to depose the individual defendants to be "better informed about the settlement amount."

According to plaintiff, he "filed a claim on the [C]ity, which was rejected as late." Plaintiff "then immediately wrote the [C]ity that, due to [his] severe medical situation, [he] should be entitled to … relief from the deadline—which [plaintiff] denied, because of the proceedings in case [number] 23STCV27860." "As to his request for late filing[,] the [C]ity claim[ed] that [it 'did] not have sufficient information'… [.]" In his "request to [the City to] admit [the] genuineness of 116 documents, [plaintiff] attached a copy of all those [claim-related] documents, but the [C]ity only acknowledged their letter to [him], that [his] claim was late ... [.]"

### 3. City's Reply

In its reply, the City opposed plaintiff's request to continue and argued that additional discovery was not relevant to the limited issues raised by the demurrer.

On the Claims Act issue, the City reiterated that plaintiff had failed to plead compliance with the Act and, in the event the trial court granted plaintiff leave to amend to cure that pleading defect, requested that he be ordered to attach to his amended pleading the documents showing compliance with the Act.

10

C.      *Anti-SLAPP Proceedings*

   1.      Motion and Evidence

   On November 1, 2024, the individual defendants filed their anti-SLAPP motion. They argued that plaintiff's claims were based on their statements "made in the [request for the civil restraining order], pleadings in [an unlawful detainer action filed against them by plaintiff's family business], reports to the police about [plaintiff's] repeated violations of the [civil restraining order], or the filing of [their] habitability lawsuit against Shlomo Botach." According to the individual defendants, all of that activity constituted protected speech or petitioning activity under the anti-SLAPP statute.

   The individual defendants also argued that plaintiff could not prevail on his claims based on conduct that pre-dated August 13, 2022, because (1) the ruling on the anti-SLAPP motion in plaintiff's first case against the individual defendants had determined that all alleged activity that occurred before June 28, 2022, had been determined to be protected activity; (2) the prior ruling collaterally estopped plaintiff from pursuing claims based on conduct that preceded June 28, 2022; and (3) claims based on conduct that occurred prior to August 13, 2022, were barred by the statute of limitations.

   The individual defendants also argued that any claims based on conduct that occurred after the first anti-SLAPP ruling were barred because "the police reports that [led] to [plaintiff's] arrest on … August 18, 2023[,] and [the individual d]efendants['] filing their civil habitability case in December 2023 [were] clearly protected activities under [s]ection 425.16."

11

Finally, the individual defendants argued that plaintiff could not show a probability of prevailing on the merits because his claims were based on the individual defendants' "statements to the police and court filings" which were privileged under Civil Code section 47, subdivision (b).

In her declaration[8] in support of the anti-SLAPP motion, Salinas testified that plaintiff was her ex-boyfriend. They lived together for five years but she moved out of his apartment in June 2021. She had two children from a previous relationship who currently lived with her at a property which was owned by plaintiff's family business. Because no certificate of occupancy for a residential dwelling unit at the property address had been issued, her apartment was an illegal unit for which rent could not be charged.

On June 29, 2021, at around 2:00 a.m., Salinas was at her apartment watching television with Melissa in the living room and Greek was in his bedroom. Plaintiff had been texting and calling Salinas for several days saying he wanted to talk. But she repeatedly told him she did not want to speak with him and said she was in the hospital so that he would not come to their apartment. Plaintiff, however, discovered that Salinas was not in the hospital and came to their apartment unannounced.

Plaintiff kicked and banged on the front door and demanded that they allow him to enter. When the individual

---

[8]     In support of the special motion to strike, the individual defendants submitted a request for judicial notice which contained certain exhibits, including Salinas's declaration from plaintiff's prior action against them. These facts are taken from that declaration. Salinas also filed a declaration in this action which, among other things, authenticated her declaration in the prior action.

defendants refused to open the door, plaintiff went to the side window and shattered it. He then screamed, "'I'm going to kick you guys out of the house! Where is your mom? Your mom needs mental health help. Come out to talk to me and if you don't, the three of you will be a problem.'"

Greek recorded the incident on his phone. Salinas "was terrified and hid behind the couch." She stayed quiet "out of fear [plaintiff] would come in and hurt [her] and [her] children."

When Melissa called the police, plaintiff overheard the call and began walking down the stairs. Salinas believed plaintiff left, but he was hiding at the bottom of the stairs listening to her talk to her children. He then ran back up the stairs and said, "'If your mom doesn't come out, there will be a problem. Something will happen to your mom tomorrow!'" Salinas told Greek not to open the door because she did not know what plaintiff would do. They waited inside the apartment for the police to arrive. They could see plaintiff outside taking photos of the apartment and their car. When plaintiff heard police sirens, he fled.

The police arrived, took Salinas's statement, and called a judge who issued an emergency protection order that expired on July 6, 2021. The police also gave Salinas a copy of an investigative report and recommended that she obtain a temporary restraining order.

On July 9, 2021, Salinas obtained a temporary restraining order in case number 21STRO03448. And, after a hearing on August 2, 2021, the trial court issued the civil restraining order against plaintiff.

On August 27, 2021, plaintiff's family filed an unlawful detainer action in case number 21STUD02127, seeking possession of the property. Because the individual defendants

13

were not named in the complaint, Greek intervened by filing a "prejudgment claim of right to possession."

Following the entry of the civil restraining order, Salinas and her children called the police on several occasions due to plaintiff's repeated violations of it, including on April 27, 2022, April 30, 2022, and June 28, 2022.

In June and July 2023, Salinas and her children also "contacted the police on more than one occasion because [they] observed [plaintiff] was in violation of the [civil restraining order]."

According to Salinas, she had never made false statements to the police or in any of the restraining order documents that she filed against plaintiff.

The individual defendants' anti-SLAPP motion included a request for judicial notice that contained copies of other complaints filed by the parties, or related parties, and subsequent filings from those actions discussed below, as well as Salinas's July 8, 2021, request for the civil restraining order, the August 2, 2021, civil restraining order, and the May 31, 2022, criminal restraining order.

### 2. Plaintiff's Opposition and Evidence

In his opposition, plaintiff argued that Salinas's declaration from the previous action was limited to events surrounding his first arrest and was therefore irrelevant to his "main" claims, which were based on the August 18, 2023, arrest. He also argued that the individual defendants' res judicata defense based on the anti-SLAPP ruling in the previous action was meritless because that action was not final and he intended to appeal from the anti-SLAPP ruling. And he argued his evidence showed that the

14

individual defendants' reports to the police were false and malicious and therefore not protected activity.

In his declaration in support of his opposition to the anti-SLAPP motion, plaintiff stated that his "acquittals in the two criminal cases filed against [him] prove[d] that [the individual d]efendants [had] abused the right to call the police. Their sole aim was … to keep on living free in two properties that they [had] taken over, without ever paying rent, or utilities."[9]

As to the August 18, 2023, incident that led to his second arrest, plaintiff testified that he went swimming that evening at his LA Fitness club and was detained by police officers as he was leaving the club. They had been called by Salinas, who was not at the club when she called the police, but falsely told the police that plaintiff had violated a protective order by coming to "'her place of employment.'" The police officers told defendant that they were aware of his earlier arrest in June, but did not know what to do because Salinas was "'adamant to get [him] arrested[.]'" He was then "arrested for [five] days[] because the biased police [S]ergeant … Lopez decided to believe [the individual d]efendants … ." He also testified that "to this day [he has] nightmares, [and he gets] scared when [he] see[s] a police car."

---

[9] Although plaintiff references his "acquittals," the exhibits attached to his declaration as well as the record before the trial court on the demurrer, demonstrate that in May 2021, plaintiff was convicted of one count and the prosecution dismissed the other two. Further, the record includes no reference to any charges being filed or dismissed following his August 18, 2023, arrest. The complaint, however, alleged that the City Attorney dismissed the charges pending against plaintiff.

15

According to plaintiff, the "main allegation in [his] complaint [was] that [individual d]efendants repeatedly lie[d] to the police, and that on [August 18, 2023,] they audaciously disregarded [the trial court's] order and warning to them[] that they must not harass [him] when [he was swimming at his club]. This major allegation … [had] no reference in [individual d]efendants['] motion, therefore their motion should be dismissed … ."

Plaintiff attached to his declaration five documents. The first was a police crime report for the April 30, 2022, incident noting that the responding officers' "investigation revealed neither party intentionally violated the restraining order [on April 30, 2022,] due to sharing a common area." The report went on to note that "[t]he victim then provided a report … that was taken on April 28, 2022[,] for violation of a protective order. According to the victim, on April 27, 2022[,] at approximately 2200 hours the suspect showed up outside of the victim's work located at 1801 [South La Cienega Boulevard] in violation of the court order. [¶] Officer[s] verified the restraining order was valid. The victim directed officers to the suspect and positively identified the suspect … . [¶] Officer[s] detained the suspect without incident. The suspect made [a] spontaneous [admission] that he saw the victim on April 27, 2022. He stated he was just going to the LA Fitness located at 1833 [South La Cienega] when he observed the victim. The suspect believe[d] he was set up by the victim and the victim's children, due to the victim wanting money."

The second document was a May 24, 2022, letter to plaintiff from the City Attorney's office stating, "After review, our office declined to file criminal charges. However, the case can be re-

16

opened and filed any time prior to the expiration of the applicable statute of limitations."

The third document was the trial court's criminal case summary for case number "LAC1CJ03589" filed on November 16, 2021, indicating that on May 31, 2022, the trial court dismissed the two charged counts for violation of sections 594, subdivision (a) and 273.6, subdivision (a), but found plaintiff guilty on the lesser offense of violating section 415.

The fourth document was a copy of the criminal protective order issued by the trial court on May 31, 2022, requiring plaintiff to stay at least 10 feet away from Salinas.

The fifth document was a copy of an email exchange between plaintiff and Deputy City Attorney Ethan Greene on June 8, 9, and 29, 2022. During that exchange, plaintiff reminded Greene that "[t]he judge asked you to call [Greek] and put him on notice that (1) he is no longer in the [restraining order]; (2) I can walk by 'their' house; and (3) I can go swimming even if they are there. You told me you told him all that. Please do that again." Greene responded, "I have informed [Salinas] and Greek of what the judge asked me to explain. They were sent a copy of the restraining order from our case. So were the police. At this point, the criminal case is concluded and my role in the matter has ceased."

### 3. Individual Defendants' Reply

In their reply, the individual defendants argued that the trial court in the previous action against them had granted their special motion to strike all claims in the complaint that pre-dated June 22, 2022, and plaintiff therefore was barred from relitigating them in this action. They also argued that any

17

claims based on conduct that occurred prior to August 13, 2022, were time-barred. And, they maintained that all the alleged claims that post-dated August 13, 2022, were based on protected activity and plaintiff could not show a probability of success on them because they were barred as a matter of law by the litigation privilege in Civil Code section 47, subdivision (b).

## D. *Hearing On Demurrer and Anti-SLAPP Motion*

On February 25, 2025, the trial court held a hearing on the City's demurrer and the individual defendants' anti-SLAPP motion and then took each matter under submission. The next day, it issued an order sustaining the demurrer without leave to amend and granting the anti-SLAPP motion to the entire complaint.

### 1. Demurrer

On the issue of compliance with the Claims Act, the trial court explained that "[plaintiff] argues that he served a claim on the City pursuant to the [Claims Act], but it was rejected as late and his request to file the notice late was also denied." The court concluded that, although his attempt to file the claim "could constitute substantial compliance," plaintiff failed to offer any support for that statement.

The trial court also ruled that all of plaintiff's claims based on his first arrest were barred by the statute of limitations, but that claims based on his second arrest on August 18, 2023, were not time barred.

Finally, the trial court concluded that each of plaintiff's remaining claims failed to state a cause of action.

18

## 2. Anti-SLAPP Motion

On the first prong of its analysis of the special motion to strike, the trial court found that "the allegations in the complaint arise from protected activity. The activity of initiating and maintaining requests for domestic violence restraining orders is protected under the anti-SLAPP statute. (See [*S.A. v. Maiden*] (2014) 229 Cal.App.4th 27, 35.) Further, 'the making of allegedly false police reports also can be protected petitioning activity under the first prong of the anti-SLAPP statute if the falsity of the report is controverted.' ([*Kenne v. Stennis*] (2014) 230 Cal.App.4th 953, 966 [(*Kenne*)].)"

On the second prong, the trial court concluded that plaintiff had "failed to demonstrate probability of success for any of his causes of action and [had] fail[ed] to address [the individual defendants'] argument that the causes of action are barred by the litigation privilege." According to the court, "statements made in seeking or maintaining a restraining order and calling the police constitute a writing or communication that has a direct relation to a judicial proceeding by a litigant authorized by law to achieve the objectives of the litigation and has a logical relation to the action. [Plaintiff] fails to cite any opposing authority or otherwise present any arguments refuting the applicability of litigation privilege. [¶] Furthermore, [plaintiff] has provided no admissible evidence to demonstrate probability of success on the merits for any of his causes of action, nor has he provided any argument concerning the merits of each cause of action. [His] conclusory statements are insufficient."

The trial court therefore granted the anti-SLAPP motion.

# III.   DISCUSSION

## A.   *Demurrer*

On the demurrer ruling, plaintiff contends the trial court erred by (1) refusing to continue the matter to allow for discovery; (2) ignoring his evidence of a late-filed claim; (3) accepting false evidence that he was arrested pursuant to a warrant; and (4) ignoring the requirements of the Bane Act.[10]

### 1.   Standard of Review

We review a trial court's ruling on a demurrer de novo. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules.  'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.] We also consider matters which may be judicially noticed.' [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]"  (*Ibid.*)

---

[10]   The Tom Bane Civil Rights Act (Civ. Code, § 52.1 et seq.). "Any arrest without probable cause involves coercion, and where accompanied by evidence of specific intent to violate the arrestee's Fourth Amendment rights, such an arrest may provide the basis for a Bane Act claim."  (*Schmid v. City and County of San Francisco* (2021) 60 Cal.App.5th 470, 483.)

20

## 2. Claims Act

"Before suing a public entity, the plaintiff must present a timely written claim for damages to the entity. (Gov. Code, § 911.2; *State of California v. Superior Court* (*Bodde*) (2004) 32 Cal.4th 1234, 1239 (*Bodde*); [citation].) … [¶] Timely claim presentation is not merely a procedural requirement, but is, as this court long ago concluded, ""a condition precedent to plaintiff's maintaining an action against defendant"" (*Bodde*, *supra*, 32 Cal.4th at p. 1240, quoting *Williams v. Horvath* (1976) 16 Cal.3d 834, 842), and thus an element of the plaintiff's cause of action. (*Bodde, supra*, [32 Cal.4th] at p. 1240.) Complaints that do not allege facts demonstrating either that a claim was timely presented or that compliance with the claims statute is excused are subject to a general demurrer for not stating facts sufficient to constitute a cause of action. (*Bodde, supra*, [32 Cal.4th] at p. 1245.)" (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 208–209.) "A claim relating to a cause of action … for injury to person … shall be presented ... not later than six months after the accrual of the cause of action." (Gov. Code, § 911.2, subd. (a).)

## 3. Analysis

Plaintiff does not dispute that his complaint did not allege he timely filed a claim with the City, as required by the Claims Act. Indeed, he concedes that he did not timely file a claim but contends that he provided an explanation for his late-filed claim, without reciting the date on which he filed the purported late claim. He also contends that because of his prior litigation, the City "had substantive knowledge about [his] claims and [was]

21

therefore estopped from denying [his] right to sue the [C]ity for the trauma [it] had caused [him] on [August 18, 2023.]"  (Boldface omitted.)

As to the conclusory assertion in his opposition declaration that he filed a late claim with a valid medical excuse for his delay, plaintiff did not request leave to amend his complaint to include that allegation and he did not request judicial notice of any documents from which the trial court could have inferred on demurrer that a late claim had been filed and that it should have been accepted by the City.  The bare assertion in his opposition declaration that he filed a late claim, without specifying the date it was filed or the date upon which the City rejected it, was insufficient to cure the pleading defect in his complaint.

As to plaintiff's contention that the City should be estopped from arguing that his causes of action for damages were barred by the Claims Act, he does not provide any analysis for his contention.  His failure to explain his position or provide authority for it waives the point on appeal.  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

Although plaintiff's claim for declaratory relief is not barred by the Claims Act, he does not raise any argument as to why that claim survives demurrer.  The trial court concluded that plaintiff's request for declaratory relief did not seek any relief that would be available under that equitable remedy.

Code of Civil Procedure section 1060 authorizes declaratory relief for an "actual controversy" relating to the rights of parties. It is designed to operate prospectively to declare future rights— not to provide redress for past wrongs.  (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 848; *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 909 ["[T]he remedy is to be used in

the interests of preventive justice, to declare rights rather than execute them"].) "'The "actual controversy" language in Code of Civil Procedure section 1060 encompasses a *probable* future controversy relating to the legal rights and duties of the parties. [Citation.]' [Citation.] It does not embrace controversies that are 'conjectural, anticipated to occur in the future, or an attempt to obtain an advisory opinion from the court.' [Citation.] Thus, while a party may seek declaratory judgment before an actual invasion of rights has occurred, it must still demonstrate that the controversy is justiciable. [Citation.] And to be justiciable, the controversy must be ripe. [Citation.]" (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1582.)

Here, plaintiff sought a declaration requiring the City to: "review its regulations which hinder the ability of real estate owners to evict squatters;" "issue orders to the police, forbidding immediate handcuffing and detainment of men accused of [restraining order violations;]" "review its regulations to make sure prosecutors have clear factual basis before filing criminal charges, and that their decisions are supervised;" "scold[ ]" the individual defendants; update the status of restraining orders in police systems; and review Sergeant Perez and Deputy City Attorney Castellanos's conduct and fire them. Plaintiff also sought to "offer his deep appreciation" to one of the trial judges and two police sergeants." Because plaintiff's declaratory relief cause of action seeks relief in the nature of a mandatory injunction to remedy allegations of past wrongs, and not a declaration of rights with respect to an actual controversy to avoid a probable future controversy, the court did not err in sustaining the demurrer to that claim.

Finally, plaintiff argues that the trial court violated his right to a fair trial by refusing to continue the demurrer hearing so he could compel discovery from the City that it had refused to provide. The discovery plaintiff references, as reflected in his correspondence with the City, concerned the arrest warrant and the issue of probable cause for his arrest. It did not relate to the late-filed claim and, even assuming plaintiff had propounded such discovery, plaintiff does not assert that, without responses to that discovery, he lacked access to a copy of his own late claim or the City's response. Because the trial court's consideration of the demurrer was limited to the well-pleaded allegations of the complaint and any documents of which the court took judicial notice, the court did not abuse its discretion by denying the continuance on the ground that the requested discovery was not relevant to its determination of the demurrer.

B. *Anti-SLAPP Motion*

On the anti-SLAPP motion, plaintiff contends (1) the individual defendants' arguments and supporting evidence ignored "the main part of [his] complaint"—the evidence of his false arrest on August 18, 2023, based on the individual defendants' misrepresentations—which therefore "rendered their motion baseless;" and (2) his verified complaint, opposition declaration, and exhibits constituted the necessary prima facie support for his claims.

1. <u>Anti-SLAPP Procedure</u>

"Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim

arises from activity protected by section 425.16. [Citation.]" *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) The court considers the elements of the claim and the acts of the defendant satisfying those elements that form the basis for liability. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).) "The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity. [Citation.]" (*Ibid.*; see *Baral, supra,* 1 Cal.5th at p. 396 ["At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them"].)

"If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral, supra,* 1 Cal.5th at p. 384.) "To succeed in opposing a special motion to strike, the nonmoving party must 'demonstrate both that the claim is legally sufficient and that there is sufficient evidence to establish a prima facie case with respect to the claim.' [Citation.] '[C]laims with the requisite minimal merit may proceed.' [Citation.] The moving party prevails by 'defeat[ing]' the 'claim as a matter of law' [citation] in 'a summary-judgment-like procedure' [citation]." (*Olson v. Doe* (2022) 12 Cal.5th 669, 679.) "As to the second step, a plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.'" (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788 (*Monster Energy Co.*).) We review the trial court's order de novo. (*Sweetwater Union High School Dist. v. Gilbane Building Company* (2019) 6 Cal.5th 931, 940.)

### 2. Prong One: Protected Activity

On appeal, plaintiff limits his arguments concerning protected activity to the facts and circumstances of his second arrest on August 18, 2023. As to his allegations concerning events that occurred *prior* to that arrest, including the petition for the civil restraining order and his first arrest, he now maintains that they should be considered "incidental" under *Baral, supra*, 1 Cal.5th 216 and were included in his complaint merely to provide context to the individual defendants' actionable conduct with respect to his second arrest. We therefore confine our analysis of whether his claims arose from protected activity to the allegations describing his August 18, 2023, arrest.

According to plaintiff, the individual defendants' actionable conduct in relation to the second arrest consisted of two false statements Salinas made to police at the LA Fitness club on August 18, 2023: (1) she had obtained a valid and enforceable protective order against plaintiff preventing him harassing the individual defendants, including at their place of employment; and (2) she and Greek were employed at the LA Fitness club.[11] As to those statements, he argues that Salinas's opposition declaration did not provide sufficient facts to controvert his verified allegations that the statements were false.

---

[11] In his opening brief, plaintiff contends that the individual defendants "told the cops that there [was] a restraining order that forbids [him] from coming to their place of employment, and they are employees of that club. [¶] Salinas lied! Maliciously!" (Boldface and capitalization omitted.) Plaintiff's declaration, however, supports only a finding that Salinas called and spoke to the police.

Salinas's alleged wrongful conduct in making a police report is protected activity under section 425.16, subdivision (e)(1). (*Comstock v. Aber* (2012) 212 Cal.App.4th 931, 942.) Further, allegations that a defendant made a false statement to the police are not excluded from anti-SLAPP protection, as a matter of law, under *Flatley v. Mauro* (2006) 39 Cal.4th 299, 321, unless the falsity of the report is uncontroverted. (*Kenne*, *supra*, 230 Cal.App.4th at p. 967.)

Here, plaintiff's allegation that Salinas made false statements to police on August 23, 2023, were controverted by Salinas's declaration in support of the anti-SLAPP motion. In paragraph 2 of that declaration, she stated, "I have never made false statements to the police regarding my observations that [plaintiff] was in violation of the [civil restraining order] that I obtained against him." Accordingly, the individual defendants met their first prong burden to demonstrate that plaintiff's allegation regarding the August 18, 2023, police report arose from protected activity within the meaning of the first prong of the anti-SLAPP statute.

### 3. Prong Two: Probability of Success

As explained, on appeal, plaintiff has limited the alleged conduct on which his claims are based to the facts and circumstances surrounding his second arrest on August 18, 2023, and, specifically, to the two false statements Salinas allegedly made to police at the LA Fitness club advising responding officers that she had a valid protective order prohibiting defendant from harassing her—including at her place of employment—and that she was employed at the club. We therefore independently review the record to determine whether plaintiff satisfied his

prima facie burden under the second prong of the anti-SLAPP procedure in light of the evidence produced as to those two statements.

### a. Litigation privilege

The individual defendants contend that plaintiff cannot demonstrate his claims have minimal merit because each is barred by the litigation privilege set forth at Civil Code section 47, subdivision (b), which, according to the individual defendants, is an "'absolute'" privilege that "'even covers false and malicious statements.'" We disagree.

"'The privilege in [Civil Code] section 47[, subdivision (b)] is "relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense plaintiff must overcome to demonstrate a probability of prevailing. [Citations.]" [Citation.]' [Citation.] [¶] The Supreme Court has stated, 'The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a "publication or broadcast" made as part of a "judicial proceeding" is privileged. … [Citation.] "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." [Citation.] The privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." [Citation.]' [Citation.]" (*Kenne, supra*, 230 Cal.App.4th at pp. 963–964.)

Section 47, subdivision (b)(5), which became effective in 2021, provides: "This subdivision does not make privileged any communication between a person and a law enforcement agency

28

in which the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report." Thus, by its express terms, subdivision (b)(5) carves out from the litigation privilege knowingly false or recklessly made police reports.

In his declaration in opposition to the motion to strike, plaintiff testified that he had been a member of his club for 25 years and swam there nightly. He also submitted: (1) his email asking Deputy City Attorney Greene to call Greek and advise him that plaintiff was permitted to swim at his club even if the individual defendants were "there;" and (2) Greene's response that he "informed [Salinas] and Greek of what the judge asked [him] to explain" and provided them with a copy of the criminal protective order. Plaintiff also testified that Salinas was employed at an office building one block from plaintiff's club and that she was not an employee of the LA Fitness club. Further, one of plaintiff's exhibits, a police report from April 22, 2022, stated that Salinas reported working at 1801 South La Cienega Boulevard and that plaintiff's club was located at 1833 South La Cienega Boulevard. Finally, plaintiff testified that he was arrested at his club for being present at Salinas's place of employment and that the arresting officer advised him that Salinas was adamant that he be arrested for that violation of the protective order.

Plaintiff's evidence supported an inference that on August 18, 2023, Salinas knew from the City Attorney's advice that plaintiff was allowed to swim at his club notwithstanding the original civil restraining order. It also supported an inference

29

that Salinas was not an employee of the club on August 18, 2023, which plaintiff would have known based on his 25 years of membership at the club, his prior dating relationship with Salinas, and his knowledge that Salinas worked at a different location near the club. Based on that evidence, a reasonable person could have inferred that Salinas's purported statements to the police that she had a valid restraining order against plaintiff that prohibited him from harassing her at her place of employment and that she was employed at the club that night were knowingly false.

In response to plaintiff's evidence, Salinas submitted a declaration that did not mention her understanding of the terms of the protective order in place as of August 18, 2023, or confirm that she was an employee of the club and was working there on the night of plaintiff's arrest. Instead, Salinas declared generally that she had never made false statements "to the police regarding [her] observations that [plaintiff] was in violation of the [civil restraining order] that [she had] obtained against him." On this record, we conclude that plaintiff met his low burden to demonstrate that the litigation privilege did not bar his claims based on his August 18, 2023, arrest. (*Monster Energy Co.*, *supra*, 7 Cal.5th at p. 793 ["[A] plaintiff's burden at the second anti-SLAPP step is a low one, requiring only a showing that a cause of action has at least 'minimal merit within the meaning of the anti-SLAPP statute'"].) We therefore next consider whether plaintiff submitted sufficient evidence to demonstrate that each of his claims had minimal merit.

b.      Malicious Prosecution

Plaintiff's first cause of action was for alleged "antisemitism; racism; violation of constitutional rights; false arrest; malicious prosecution" (boldface and capitalization omitted).  The allegations regarding all but the malicious prosecution claim were based on the conduct of City employees and therefore not directed at any conduct by the individual defendants.  Further, given plaintiff's contention on appeal that his claims are premised entirely on Salinas's false August 18, 2023, statements to the police, we do not consider whether plaintiff could demonstrate a probability of prevailing on any claims based on other conduct or against the other two individual defendants.

"The tort [of malicious prosecution] consists of three elements.  The underlying action must have been:  (i) initiated or maintained by, or at the direction of, the defendant, and pursued to a legal termination in favor of the malicious prosecution plaintiff; (ii) initiated or maintained without probable cause; and (iii) initiated or maintained with malice."  (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 775.)  Termination in favor of the plaintiff is an essential element of the tort of malicious prosecution, and the requirement is strictly enforced.  (*Cox v. Griffin* (2019) 34 Cal.App.5th 440, 450.)  "The core concept is that the termination must reflect on the *merits* of the prior action." (*Ibid.*)  "'The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort [of malicious prosecution].'" (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 341.)

31

Here, plaintiff did not submit any evidence to demonstrate that the City Attorney or any prosecuting agency dismissed any charges filed against plaintiff following his August 18, 2023, arrest, much less that the dismissal was based on a finding that plaintiff was innocent of the charges. (See *Jaffe v. Stone* (1941) 18 Cal.2d 146, 150 [a dismissal of criminal proceedings, for any reason "not inconsistent with [plaintiff's] guilt … does not constitute a favorable termination"].) Accordingly, plaintiff did not demonstrate that he had a probability of prevailing on his first cause of action for malicious prosecution. Although plaintiff alleged in his complaint that Deputy City Attorney Castellanos sent him an email on September 13, 2023, advising him that he would move to have the charges dismissed, plaintiff may not rely solely on the allegations in his complaint to meet his second prong burden. (*Monster Energy Co., supra*, 7 Cal.5th at p. 788.) In any event, even if plaintiff had submitted a declaration attesting to this exchange, plaintiff could not demonstrate that the dismissal was based on a finding that plaintiff was innocent of the charges.[12]

c. Defamation

The elements of defamation include: "'"(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." [Citation.]' (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720.)[Footnote

---

[12] As we note above, despite plaintiff's reference to "two acquittals," the complaint and the record on appeal do not support a finding that plaintiff was acquitted of any charges following his two arrests.

omitted.] 'Publication means communication to some third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made. Publication need not be to the "public" at large; communication to a single individual is sufficient.' (*Smith v. Maldonado* (1999) 72 Cal.App.4th 637, 645 (*Smith*).)" (*Sanchez v. Bezos* (2022) 80 Cal.App.5th 750, 763.)

Plaintiff submitted evidence that on August 18, 2023, Salinas made a false statement to a third party, the police. He also submitted evidence that the statement was false, that is, Salinas falsely stated she worked at plaintiff's club and that plaintiff violated the civil protective order by visiting that club. For the reasons we explain above in our discussion of the inapplicability of the litigation privilege, we conclude plaintiff submitted sufficient evidence to make a prima facie showing that the statements were not subject to the Civil Code section 47 litigation privilege. Finally, because the statements falsely alleged that plaintiff had committed a crime, they constituted slander per se and relieved plaintiff from the burden of providing any additional proof of damages. (Civil Code, § 46; *Regalia v. The Nethercutt Collection* (2009) 172 Cal.App.4th 361, 367.) Plaintiff therefore demonstrated that his defamation claim against Salinas had minimal merit and the trial court erred when it struck that claim.

### d. Emotional Distress

Plaintiff alleged a cause of action entitled "severe emotional distress" which we construe as a claim for intentional infliction of emotional distress. "The elements of a cause of action for intentional infliction of emotional distress are: "'(1) outrageous

33

conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress.""" (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1376.)

On this record, we conclude that plaintiff's evidence demonstrating that Salinas came to plaintiff's LA Fitness club on August 18, 2023, as she had done in the past, to entrap him by making a knowingly false statement to the police that he had violated the terms of a protective order was sufficient to demonstrate that Salinas engaged in "outrageous conduct." (*Begier v. Strom* (1996) 46 Cal.App.4th 877, 884.) Further, plaintiff alleged in his declaration that, as a result of Salinas's statement, he was "arrested for [five] days," and that "to this day, [he has] nightmares … and get[s] scared when [he] see[s] a police car." On this record, we conclude that plaintiff demonstrated that his infliction of emotional distress claim against Salinas had minimal merit.

### e. Conspiracy, Fraud, Undue Enrichment

Plaintiff's allegations regarding his cause of action for conspiracy, fraud, and undue enrichment state that the individual defendants conspired to take over plaintiff's real estate and avoid paying him rent. Although plaintiff alleged in this cause of action that the individual defendants called 911 "whenever they saw [p]laintiff walking by his house," he did not testify that Salinas's August 18, 2023, report was an act in furtherance of the conspiracy or fraud. Given plaintiff's concession that his claims were premised on and limited to

34

Salinas's August 18, 2023, conduct, we need not discuss whether plaintiff demonstrated the minimal merits of this claim and therefore affirm the trial court's order striking this claim.

### f. Punitive damages

"In California, it is settled there is no separate cause of action for punitive damages. [Citation.] Instead, a claim for punitive damages is merely an additional remedy that is dependent on a viable cause of action for an underlying tort"].) (*569 East County Boulevard, LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 429, fn. 3.) Although styled as a cause of action, plaintiff's claim for punitive damages is more properly construed as a prayer for relief. And, given that we have concluded two of his tort claims, defamation and intentional infliction of emotional distress, survive the anti-SLAPP motion, we reverse the trial court's order striking that prayer for relief. (See *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1137 ["A punitive damage claim depends upon a viable claim for compensatory damages for its vitality. [Citation.] Here, because plaintiffs are permitted to amend their complaint to state claims for intentional torts upon which a claim for punitive damages may be based, the trial court erred in striking plaintiffs' prayer for punitive damages"].)

## IV.   DISPOSITION

The order sustaining the City's demurrer without leave to amend is affirmed.  The order granting the individual defendants' anti-SLAPP motion is reversed, in part, and remanded to the trial court for further proceedings on plaintiff's defamation and "severe emotional distress" causes of action against defendant Salinas only.  The City is entitled to its costs on appeal.  In the interest of justice, no costs are awarded to plaintiff or the individual defendants.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM (D.), J.


We concur:



HOFFSTADT, P. J.



KUMAR, J.*

---

*      Retired judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.